UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| AARON KING, | Case No. 17-cv-04618-DMR |
|---|---|
| Plaintiff, | |
| v. | **ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| CITY OF SAN MATEO, et al., | Re: Dkt. No. 8 |
| Defendants. | |

Defendants City of San Mateo ("San Mateo"), Susan E. Manheimer, Travis Barker, and Lucas Thornburg filed a motion to dismiss pro se Plaintiff Aaron King's complaint. [Docket No. 8.] In response, King filed a "motion for partial summary judgment" on his claims. [Docket No. 15.] The court held a hearing on December 14, 2017 and ordered the parties to submit supplemental briefing, which the parties timely filed. [Docket Nos. 31 (Defs.' Suppl. Br.), 32 (Pl.'s Suppl. Br.).] For the following reasons, Defendants' motion is granted in part and denied in part. King's motion is denied.

## I. ALLEGATIONS IN THE COMPLAINT

King describes himself as a "Negro male working in an established and lawful business in the city of San Mateo" during the events in question. Compl. ¶ 8. He challenges the lawfulness of his July 3, 2016 detention by the San Mateo Police Department ("SMPD") for an investigative stop, or so-called "*Terry* stop."[1] He also alleges that Defendants are enforcing a "Stop & Identify" practice, which "has been specifically invalidated by Order of the U.S. Supreme Court." *Id.* at ¶ 1.

Attached as Exhibit A to the complaint is the SMPD CAD Incident Report documenting the July 3, 2016 detention, which classified the incident as "1066—Suspicious Person." Compl.

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

Ex. A (CAD). Defendant SMPD Officer Thornburg radioed dispatch at 1:16 a.m. regarding King as he traveled on foot on East Hillsdale Boulevard. Compl. ¶ 15; CAD. Thornburg then stopped his police cruiser in front of King and ordered him to stop walking. Compl. ¶ 17. After King complied, Thornburg exited his cruiser, accused King of "carrying wearing stolen rucksack/clothing," and added that "[King] fit the description." *Id*. at ¶¶ 18-19. Shortly thereafter, additional SMPD units joined Thornburg, including a police cruiser driven by Defendant SMPD Officer Barker. *Id*. at ¶¶ 20-23.

According to King, "Thornburg would not provide specifics as to what property was taken, or where the theft crime occurred." *Id*. at ¶ 24. At 1:18 a.m., in order to "end the *Terry* stop," King provided to Thornburg the location and name of his employer and informed him that he "works the closing shift, and had just closed the shop." He also told Thornburg that he was walking to the nearest bus stop in San Mateo, and showed Thornburg his employer's logo sewn on his shirt. *Id*. at ¶ 25. King alleges that the ownership of his rucksack "was of concern to Thornburg," and that to "resolve this dilemma," King told Thornburg that he would describe the items in his rucksack. *Id*. at ¶¶ 26-27. Thornburg agreed, and King described in detail the items in his rucksack. After King removed the first item and handed it to Thornburg, Barker began "yelling and demanding to see [King's] driver's license or ID." *Id*. at ¶¶ 28-32. King "continued working to satisfy Thornburg's inquiry" and Thornburg examined the second item. *Id*. at ¶¶ 33-34. At 1:22 a.m., Thornburg returned the two items to King and "cleared [King]." According to King, he was "'Sent on Way' by Thornburg." *Id*. at ¶ 36 (quoting CAD).

King alleges that Barker "was in the background having a tantrum" after King was cleared to leave, and that Barker then "jumped into [the] picture yelling, berating [King] and demanding to see [his] driver's license or ID." *Id*. at ¶¶ 38-39. King "requested a sergeant from Thornburg," and at 1:22 a.m., SMPD Sergeant Von Glahn was dispatched to the location. *Id*. at ¶¶ 40, 41, CAD. At 1:23 a.m, King told Barker "that he had already provided all the information he wanted to provide without a lawyer or friendly third-party present," and "explicitly invoked his 5th Amendment privilege . . . to not provide any additional information (including driver's license or ID) outside of the information" he had already provided to Thornburg. Compl. ¶ 43. King alleges

that Barker then "commandeered the *Terry* stop, refused [King's] 5th Amendment privilege, and enforced '*Stop & Identify*'": Barker told King that he would be detained until he produced a driver's license or ID. King again invoked his 5th Amendment privilege. *Id*. at ¶¶ E, 47-48.

At 1:30 a.m., "the requested sergeant had still not arrived," and at 1:31 a.m., Barker "continued the yelling, berating, bullying and name calling directed at" King. *Id*. at ¶¶ 50, 54. King alleges that "[it] was clear that [he] was not free to leave." *Id*. at ¶ 55. Barker yelled at King to "get on the ground," and King alleges that he was surrounded by at least four armed SMPD officers and a K-9 unit. *Id*. at ¶¶ 56, 60. At some point, Barker took King's identification. According to King, the additional officers and K-9 unit were "only cleared away" from King after Barker took his identification. *Id*. at ¶ 60. Barker "called-in [King's] identifiers" from his identification to the SMPD dispatcher, and King alleges that "as a direct result of enforcement of '*Stop & Identify*,'" Barker "attached [King's] name" to the CAD Incident Report, permanently and publicly memorializing King as a "suspicious person," "thus creating a permanent, public record implying criminal or less than honorable behavior by [King] in the city of San Mateo." *Id*. at ¶¶ 61-62; CAD. At 1:32 a.m., Barker returned King's identification and King was "'Sent o[n] Way' (for the second time)." Compl. ¶¶ 63, 64; CAD. King's detention was closed at 1:32 a.m. Compl. ¶ 67; CAD.

Following his detention, King met with two SMPD sergeants to notify them of Barker's enforcement of a "Stop & Identify" practice. Compl. ¶¶ 68-69. He also notified SMPD Chief of Police Manheimer.[2] *Id*. at ¶¶ 71-72; Ex. B2. Attached as Exhibit C to the complaint is a November 17, 2016 letter from SMPD Lieutenant Matthew Earnshaw in which he wrote that King "[is] not a suspect in any incident with the San Mateo Police Department" and provided further details about King's detention:

> Please understand there was a burglary less than a mile away at 1:07am where a backpack was taken. The witness to the incident said the suspect was carrying the backpack.
>
> Please understand you are not listed in the burglary report and there was no mention of your name. We do not consider you to be a

---

[2] King's complaint repeatedly refers to Manheimer as "Chiefman," which appears to be a typo. *See, e.g*., Compl. ¶¶ 71-74, 134-138.

3

> witness or victim in this incident. You were contacted based on circumstances such as wearing a backpack while walking the streets in the early morning hours less than a mile from the incident and within minutes of the burglary taking place.

Comp. Ex. C (Earnshaw letter). Lt. Earnshaw also wrote that "[t]he San Mateo Police Department does not engage in a Stop and Frisk practice." *Id*.

King alleges that the CAD Incident Report is SMPD's "complete and official accounting" of his detention. Compl. ¶¶ 91, 97, 111, 119. While the CAD Incident Report names King as a "suspicious person," he alleges that it is vague and contains no facts to support this assertion, including any mention of a burglary or a backpack. *See, e.g., Compl*. ¶¶ 113, 114, 120-121, 125. According to King, the vagueness of the report "allows SMPD to later allege (some 100 days later) something different—a burglary, robbery, jaywalking, spitting on sidewalk or any crime to justify their claim of reasonable suspicion on July 3, 2016." *Id*. at ¶ 122; *see also id*. at ¶ 118. King alleges that based on the CAD Incident Report, Thornburg "failed to articulate (and cannot articulate) specific facts which show what behavior as observed by any SMPD officer made [King] a 'suspicious person.'" *Id*. at ¶ 126. Therefore, according to King, Thornburg "performed the *Terry* stop on less than reasonable suspicion." *Id*. at ¶ 128.

Liberally construing the complaint, King alleges three claims for relief. First, King alleges a 42 U.S.C. § 1983 ("section 1983") claim for violation of the Fourth and Fifth Amendments based on his detention. He alleges that Thornburg's initial detention was unlawful because it was not based on reasonable suspicion. He further alleges that Barker's continued detention of King after Thornburg had cleared and released him was unlawful, and challenges Barker's enforcement of "Stop and Identify" as to King.[3] Second, King alleges a section 1983 claim against San Mateo and Chief of Police Manheimer under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), based on the "Stop and Identify" practice. Third, King alleges claims for fraud and conspiracy to commit fraud, based upon San Mateo's "scheme to conceal the practice of 'Stop & Identify' through the filing of overly vague public documents," which allows

---

[3] King's first, second, and fourth claims for relief are duplicative, as they each allege that Barker and Thornburg detained King in violation of the Fourth and Fifth Amendments. *See* Compl. ¶¶ 139-145.

4

police officers to "change previously filed facts." Compl. ¶¶ 147-148.

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss King's complaint. King moves for partial summary judgment on his claims.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Where, as here, the plaintiff is a pro se litigant, the plaintiff's complaint is "to be liberally construed" and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

For purposes of Rule 12(b)(6) review, the court reviews documents incorporated into the complaint, as well as judicially noticeable material. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (incorporation by reference); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (judicial notice).

5

## B. Motion for Summary Judgment

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id*. at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id*. at 249.

To defeat summary judgment once the moving part has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. MOTION TO DISMISS

### A. Section 1983 Claims Against Thornburg and Barker

To state a claim for damages under 42 U.S.C. § 1983, a plaintiff must allege facts that show "(1) acts by the defendants (2) under color of state law (3) depriving [the plaintiff] of federal rights, privileges or immunities (4) causing [the plaintiff] damage." *Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1994).

Defendants move to dismiss King's section 1983 claims against Thornburg and Barker, arguing that King has not alleged a violation of his Fourth or Fifth Amendment rights relating to

his 20-minute detention. They also contend that the individual defendants are entitled to qualified immunity. Finally, Defendants assert that to the extent King brings his unlawful detention claim against Manheimer, it is insufficiently pleaded.

### 1. Fourth Amendment

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). A police officer may, "in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry*, 392 U.S. 1, 23. *Terry* allows an officer to "conduct a brief, investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *Arizona v. Johnson*, 555 U.S. 323, 326 (2009) (same). In addition to preventing ongoing or imminent crime, police may effectuate a *Terry* stop "if they have a reasonable suspicion grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony." *United States v. Hensley*, 469 U.S. 221, 229 (1985). Unlike an arrest, which must be supported by probable cause, *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995), *Terry* stops are constitutionally permissible if the officer has a "reasonable suspicion" that the person detained is engaged in criminal activity. *Bingham v. Schreiber*, 341 F.3d 939, 946-47 (9th Cir. 2003) (traffic stop); *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (same). When making reasonable suspicion determinations, a reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411 (1981)).

As King's section 1983 claim challenges both his initial detention by Thornburg and the continued detention by Barker during which he asked for King's identification, it is appropriate to analyze the two phases of the detention.

#### a. Initial Detention by Thornburg

Defendants argue that King has failed to state a Fourth Amendment claim challenging the

7

initial detention because the allegations in the complaint and documents subject to judicial notice demonstrate that the officers had "reasonable suspicion" to detain King.[4] According to Defendants, facts supporting reasonable suspicion include the following: 1) a burglary had taken place nearby in which a backpack had been reported stolen; 2) "the burglary had taken place just a few minutes before" the detention; 3) King "matched the witness's description of the burglar and was carrying a backpack"; and 4) it was 1:20 a.m. Defs.' Mot. 3. According to Defendants, these facts provided the officers with reasonable suspicion necessary to detain King.

While such facts, if true, may establish that Thornburg had a "particularized and objective basis" to suspect that King had engaged in wrongdoing, not all of these facts are alleged in King's complaint. Instead, they are largely taken from the November 17, 2016 letter to King from Lt. Earnshaw in which he offers an explanation for the officers' detention of King. *See* Defs.' Mot. at 3-4 (citing Compl. Ex. C). While documents attached to the complaint may be considered as part of the complaint for purposes of a Rule 12(b)(6) motion to dismiss, *see* Fed. R. Civ. P. 10(c); *Petri v. Electronic Game Card, Inc.*, 761 F.3d 959, 964 n.6 (9th Cir. 2014), Defendants' apparent position is that the court must accept the statements in Lt. Earnshaw's letter as true and established facts about the detention. Not so. The letter simply sets forth Defendants' position on King's allegations. Notably, King specifically disputes the validity of Lt. Earnshaw's explanation, which was offered "some 100 days **after** the *Terry* stop." *See, e.g.*, Compl. ¶ 118 (emphasis in original).

The pleaded facts relating to reasonable suspicion are that Thornburg accused King of "carrying/wearing stolen rucksack/clothing," and that Thornburg made a cryptic statement that King "fit the description." Compl. ¶ 19; *see also* Defs.' Mot. 3 (citing Compl. ¶ 19). The CAD Incident Report, which King repeatedly alleges is "SMPD['s] complete and official accounting" of the detention, (*see, e.g.*, Compl. ¶ 111), is silent as to any facts related to reasonable suspicion as articulated by Defendants, other than the late night hour in which the detention occurred. At the pleading stage, where the court must accept King's allegations as true, it cannot say as a matter of law that Thornburg had "a reasonable suspicion grounded in specific and articulable facts" that

---

[4] Defendants do not identify which documents are subject to judicial notice, and do not ask the court to take judicial notice of any documents.

King was involved with a crime based on those three allegations alone. *See Hensley*, 469 U.S. at 229. Accordingly, Defendants' motion to dismiss King's Fourth Amendment claim based upon Thornburg's initial detention of King is denied.

### b. Continued Detention by Barker

Defendants also move to dismiss King's Fourth Amendment claim based upon Barker's continued detention of King while demanding his identification. Defendants argue that a demand for identification is a standard part of a *Terry* stop and does not violate an individual's Fourth Amendment rights. In response, King argues that the Supreme Court invalidated California's "Stop and Identify" law in *Kolender v. Lawson*, 461 U.S. 352 (1983). He contends that Barker's demand that King identify himself and continued detention of King to enforce "Stop and Identify" as to King were unlawful.

The Fourth Amendment does not bar an officer from asking a suspect to disclose his or her name in the course of a *Terry* stop. *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 185-87 (2004). An inquiry into a suspect's identity is a "routine and accepted part of many *Terry* stops" and serves important government interests. *Id*. at 186. For example, "[k]nowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder. On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere." *Id*. In *Hiibel*, the Supreme Court held that while "the Fourth Amendment itself cannot require a suspect to answer questions," including an officer's question about an individual's identity, a suspect may be prosecuted under *state law* for refusing to identify himself. *Id*. at 187-88. The Court in *Hiibel* upheld a Nevada statute authorizing the arrest of persons who refuse to identify themselves to police, holding that "[a] state law requiring a suspect to disclose his name in the course of a valid *Terry* stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures." *Id*. at 188-89. However, the Court clarified that because a *Terry* stop must be justified at its inception and reasonably related in scope to the circumstances justifying the stop, an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to those circumstances. *Id*. at 188-89 (holding that the Nevada officer's "request was a

9

commonsense inquiry, not an effort to obtain an arrest for failure to identify after a *Terry* stop yielded insufficient evidence").

Here, King focuses on the fact that the Supreme Court previously invalidated a California stop and identify statute as unconstitutionally vague. *See Kolender*, 461 U.S. at 360 (invalidating California Penal Code section 647(e)).[5] He contends that as a result of the *Kolender* decision, there is no California statute authorizing the arrest of an individual who refuses to identify himself to police. King argues that because California "lacks a competent and valid" stop and identify statute, the Fourth Amendment prohibited Barker from demanding his identification during the detention. *See* Pl.'s Opp'n 5. This is incorrect, for "it is well established that an officer may ask a suspect to identify himself in the course of a *Terry* stop." *Hiibel*, 542 U.S. at 186. Therefore, King may not maintain a Fourth Amendment claim solely based on Barker's demands that he identify himself.

However, Barker's demand for identification is not the sole basis for King's Fourth Amendment claim based on his continued detention. King also alleges that "Barker told [King] that he would be detained until he produced a driver's license or ID"; in other words, Barker refused to release King until he complied with the demand for identification. *See* Compl. ¶ 47. At the hearing, defense counsel was unable to cite any authority for the proposition that a police officer may lawfully detain an individual for failure to produce identification under California law. The court ordered the parties to submit supplemental briefing addressing this issue. In their supplemental brief, Defendants state that "failure to identify oneself cannot, on its own, justify an arrest." They concede that California Penal Code section 148 does not justify an arrest for refusing to identify oneself. Defs.' Suppl. Br. 1 (quoting *United States v. Christian*, 356 F.3d

---

[5] California Penal Code section 647(e) formerly provided that a person "[w]ho loiters or wanders upon the streets . . . and who refuses to identify himself and to account for his presence when requested by any peace officer to do so . . ." is guilty of disorderly conduct, a misdemeanor. *Kolender*, 461 U.S. at 353 n.1. A California court had construed the statute to require "that an individual provide 'credible and reliable' identification when requested by a police officer who has reasonable suspicion of criminal activity sufficient to justify a *Terry* detention." *Id*. at 355-56 (quoting *People v. Solomon*, 33 Cal. App. 3d 429, 438 (1973)). The Supreme Court held that section 647(e) was "unconstitutionally vague on its face because it encourag[ed] arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute." *Kolender*, 461 U.S. at 361.

10

1103, 1106 (9th Cir. 2004)) and citing *Martinelli v. City of Beaumont*, 820 F.2d 1491, 1494 (9th Cir. 1987) ("[t]he court should have instructed the jury that the use of Section 148 to arrest a person for refusing to identify herself during a lawful *Terry* stop" violates the Fourth Amendment)). They further concede that "[t]o the extent that Mr. King has alleged facts that an officer continued to detain him while demanding his identification, or required the production of that identification as a condition of release, *after* there was no longer any reasonable suspicion for the *Terry* investigation, his pleading states a cause of action." *Id*. at 1-2 (emphasis in original).

The complaint includes the allegations that that Barker "commandeered" the *Terry* stop to demand King's identification and refused to conclude the detention even after Thornburg had cleared King to leave, requiring King to produce his identification before Barker would release him. *See* Compl. ¶¶ 47, 91-101. King has therefore stated a claim based on his continued detention by Barker. Defendants' motion to dismiss this portion of King's Fourth Amendment claim based upon his detention is denied.

### 2. Fifth Amendment

Defendants next move to dismiss King's section 1983 claim alleging violation of his Fifth Amendment rights against self-incrimination based upon Barker's request for identification.

The Fifth Amendment guarantees that "[no] person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To qualify for the Fifth Amendment privilege, the communication must be testimonial, incriminating, and compelled. *Hiibel*, 542 U.S. at 189. In *Hiibel*, the Court rejected the defendant's argument that disclosure of his name violated the Fifth Amendment's prohibition on compelled self-incrimination. The Court emphasized that "[t]he Fifth Amendment prohibits only compelled testimony that is incriminating," and held that "petitioner's refusal to disclose his name was not based on any articulated real and appreciable fear that his name would be used to incriminate him, or that it 'would furnish a link in the chain of evidence needed to prosecute' him." 542 U.S. at 189-90 (quoting Hoffman v. United States, 341 U.S. 479, 486 (1951). The Court explained that "[a]nswering a request to disclose a name is likely to be so insignificant in the scheme of things as to be incriminating only in unusual circumstances." *Id.* at 191.

11

Here, King does not allege the presence of any "unusual circumstances" to show that he resisted disclosing his name based on any "articulated real and appreciable fear that his name would be used to incriminate him." To the contrary, he alleges that he "explicitly invoked his 5th Amendment privilege" and refused to identify himself to Barker *after* Thornburg had cleared him and sent him on his way. This indicates that he had no reason to believe that identifying himself would incriminate him. Compl. ¶¶ 35-43. Accordingly, King has failed to state a claim for violation of the Fifth Amendment. This claim is dismissed with leave to amend.

### 3. Qualified Immunity

Defendants next argue that the individual defendants are entitled to qualified immunity. "Qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (quotations omitted). "To determine whether qualified immunity applies in a given case, [courts] must determine: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." *Id*. (citation omitted).

Defendants argue that they are entitled to qualified immunity because King has not sufficiently alleged a violation of his constitutional rights. According to Defendants, Thornburg and Barker "had reasonable suspicion to stop and question [King], as well as to demand his identification." Mot. 6. As discussed above, King has stated a section 1983 claim against Thornburg and Barker for violation of his Fourth Amendment rights. Accordingly, Defendants' motion to dismiss based on qualified immunity is denied.

### 4. Claims against Manheimer

Defendants also move to dismiss the section 1983 claims against Manheimer on the ground that King does not allege that she personally participated in the alleged constitutional violations.

"Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)). "A supervisor is only liable for constitutional violations of his [or her]

1 subordinates if the supervisor participated in or directed the violations, or knew of the violations
2 and failed to act to prevent them." *Id*. Here, the complaint contains no allegations that
3 Manheimer participated in the detention, directed it, or failed to prevent the detention.
4 Accordingly, King's section 1983 claims against Manheimer are dismissed with leave to amend.

### B. *Monell* Claim

Defendants next move to dismiss King's *Monell* claim against San Mateo and Manheimer. In this claim, King alleges that San Mateo and Manheimer are aware that Barker continues to enforce "stop and identify" and have not corrected his practice.

A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692). However, the municipality may be held liable "only for '[its] *own* illegal acts.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). It cannot be held vicariously liable for its employees' actions. *Id.* (citations omitted). To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). "The 'official policy' requirement 'was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality,' and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694).

In order to establish *Monell* liability, a plaintiff must prove that (1) he or she possessed a constitutional right of which he was deprived; (2) "that the municipality had a policy"; (3) "that this policy amounts to deliberate indifference to the plaintiff's constitutional right"; and (4) "that the policy is the moving force behind the constitutional violation." *Dougherty*, 654 F.3d at 900 (quotation omitted). Here, King has not stated a *Monell* claim, as the complaint does not contain

13

United States District Court
Northern District of California

1  any allegation that San Mateo had a policy of unlawfully enforcing "stop and identify." In fact,

2  King actually alleges the opposite, that the San Mateo District Attorney issued directives

3  instructing law enforcement agencies to cease requiring suspects to identify themselves and that

4  Barker enforced "stop and identify" "in defiance of San Mateo County District Attorney

5  Directive." Compl. ¶¶ 90, 106. Accordingly, King has failed to state a *Monell* claim. This claim

6  is dismissed with leave to amend.

### C. Fraud Claims

King's final claims are for fraud and conspiracy to commit fraud, based upon San Mateo's alleged "scheme to conceal the practice of 'Stop & Identify' through the filing of overly vague public documents," which allows police officers to "change previously filed facts." Compl. ¶¶ 147-148. Defendants move to dismiss these claims as insufficiently pleaded.

To state a claim for fraud, King must allege "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quotation omitted). "Each element in a cause of action for fraud . . . must be factually and specifically alleged." *Cadlo v. Owens-Illinois*, Inc., 125 Cal. App. 4th 513, 519 (2004). Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (*quoting Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must include "the who, what, when, where, and how" of the misconduct charged). Vague or conclusory allegations are insufficient to satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

The complaint contains no allegations satisfying the standard to allege a fraud or fraud-based claim. Moreover, it contains no allegations to support King's theory that San Mateo "devised a scheme" to conceal its "Stop and Identify" practice by using "overly vague public documents." King does not address the fraud claims in his opposition, other than asserting that he

requests discovery on this claim. Pl.'s Opp'n 12. Accordingly, these claims are dismissed with leave to amend.

## IV. MOTION FOR SUMMARY JUDGMENT

In his opposition to Defendants' motion to dismiss, King also moves for summary judgment, apparently seeking summary judgment on his claims that Barker and Thornburg violated his Fourth and Fifth Amendment rights by detaining him without reasonable suspicion. King does not address the standard for summary judgment in his motion. He also supports his motion with an affidavit in which he essentially repeats the allegations in his complaint, many of which are legal argument, not facts. Defendants apparently did not interpret King's opposition brief as a standalone motion and did not file a separate opposition to the motion. As this matter is still in the pleading stage and not all of King's claims are sufficiently pleaded as discussed above, King's motion for summary judgment is premature and denied on that ground.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. King's section 1983 claim based on violation of the Fifth Amendment, claims against Manheimer, *Monell* claim, and fraud and conspiracy to commit fraud claims are dismissed with leave to amend. King's motion for summary judgment is denied as premature. Any amended complaint must be filed by no later than February 12, 2018. The court will conduct a case management conference on March 21, 2018 at 1:30 p.m. A joint case management statement is due by March 14, 2018.

**IT IS SO ORDERED.**

Dated: January 29, 2017



Donna M. Ryu
United States Magistrate Judge

15