UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON KING,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SAN MATEO, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-04618-DMR<br><br>**ORDER ON PLAINTIFF'S MOTION TO RESCIND SETTLEMENT AGREEMENT**<br><br>Re: Dkt. No. 55 |

On April 24, 2018, after having been notified of the settlement of this action, the court entered an order conditionally dismissing the case. [Docket No. 54.] The court dismissed pro se Plaintiff Aaron King's claims with prejudice, but stated that "[i]n the event that the settlement is not reached," any party could move to reopen the case, provided that such motion was filed within 60 days. *Id.* On June 25, 2018, King filed a motion to rescind the parties' settlement agreement and restore the case to the trial calendar. [Docket No. 55.]

Defendants Travis Barker and Lucas Thornburg oppose the motion and move to enforce the settlement agreement. [Docket No. 57.]

The court held a hearing on August 23, 2018 and ordered Defendants to file a supplemental brief addressing an argument raised for the first time in King's reply brief. [Docket No. 63.] Defendants timely filed the requested brief. [Docket No. 65 (Defs.' Supp. Br.).] For the following reasons, King's motion is denied. Defendants' motion to enforce the settlement agreement is granted.

I.  **BACKGROUND**

　　**A. King's Allegations**

King filed a complaint on August 11, 2017 against the City of San Mateo ("San Mateo"), San Mateo Chief of Police Susan Manheimer, and San Mateo police officers Travis Barker and

Lucas Thornburg. He challenged the lawfulness of his July 3, 2016 detention by Thornburg and Barker for an investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), arguing that the officers did not have reasonable suspicion to perform the investigative stop. He also alleged that Defendants were enforcing an unlawful "Stop & Identify" practice.

Attached as Exhibit A to the complaint is the SMPD CAD Incident Report documenting the July 3, 2016 detention, which classified the incident as "1066—Suspicious Person." Compl. Ex. A (CAD). Defendant Thornburg radioed dispatch at 1:16 a.m. regarding King as he traveled on foot on East Hillsdale Boulevard. Compl. ¶ 15; CAD. Thornburg then stopped his police cruiser in front of King and ordered him to stop walking. Compl. ¶ 17. After King complied, Thornburg exited his cruiser, accused King of "carrying wearing stolen rucksack/clothing," and added that "[King] fit the description." *Id*. at ¶¶ 18-19. Shortly thereafter, additional SMPD units joined Thornburg, including a police cruiser driven by Defendant Barker. *Id*. at ¶¶ 20-23.

According to King, in an attempt to end the detention, he provided to Thornburg the location and name of his employer and informed him that he "works the closing shift, and had just closed the shop." He also told Thornburg that he was walking to the nearest bus stop in San Mateo, and showed Thornburg his employer's logo sewn on his shirt. *Id*. at ¶ 25. King alleges that the ownership of his rucksack "was of concern to Thornburg," and that to "resolve this dilemma," King told Thornburg that he would describe the items in his rucksack. *Id*. at ¶¶ 26-27. Thornburg agreed, and King described in detail the items in his rucksack. After King removed the first item and handed it to Thornburg, Barker began "yelling and demanding to see [King's] driver's license or ID." *Id*. at ¶¶ 28-32. King "continued working to satisfy Thornburg's inquiry" and Thornburg examined the second item. *Id*. at ¶¶ 33-34. At 1:22 a.m., Thornburg returned the two items to King and "cleared [King]." According to King, he was "'Sent on Way' by Thornburg." *Id*. at ¶ 36 (quoting CAD).

King alleged that after he was cleared to leave, Barker continued to demand his identification, and told King that he would be detained until he produced a driver's license or ID. *Id*. at ¶¶ 38-39, 47-48. Although King repeatedly invoked his Fifth Amendment privilege to not provide any additional information, at some point, Barker took King's identification. *Id*. at ¶¶ 43,

47-48. King alleges that he was surrounded by at least four armed SMPD officers and a K-9 unit. *Id*. at ¶¶ 56, 60. According to King, the additional officers and K-9 unit moved away from King only after Barker took his identification. *Id*. at ¶ 60. Barker "called-in [King's] identifiers" from his identification to the SMPD dispatcher, and King alleges that Barker "attached [King's] name" to the CAD Incident Report, permanently and publicly memorializing King as a "suspicious person," "thus creating a permanent, public record implying criminal or less than honorable behavior by [King] in the city of San Mateo." *Id*. at ¶¶ 61-62; CAD. At 1:32 a.m., Barker returned King's identification and King was "'Sent o[n] Way' (for the second time)." Compl. ¶¶ 63, 64; CAD.

Following his detention, King met with two SMPD sergeants to notify them of Barker's enforcement of a "Stop & Identify" practice. Compl. ¶¶ 68-69. He also notified SMPD Chief of Police Manheimer. *Id*. at ¶¶ 71-72; Ex. B2. Attached as Exhibit C to the complaint is a November 17, 2016 letter from SMPD Lieutenant Matthew Earnshaw in which he wrote that King "[is] not a suspect in any incident with the San Mateo Police Department" and provided further details about King's detention:

> Please understand there was a burglary less than a mile away at 1:07am where a backpack was taken. The witness to the incident said the suspect was carrying the backpack.
>
> Please understand you are not listed in the burglary report and there was no mention of your name. We do not consider you to be a witness or victim in this incident. You were contacted based on circumstances such as wearing a backpack while walking the streets in the early morning hours less than a mile from the incident and within minutes of the burglary taking place.

Comp. Ex. C (Earnshaw letter).

King alleged that the CAD Incident Report is SMPD's "complete and official accounting" of his detention. Compl. ¶¶ 91, 97, 111, 119. While the CAD Incident Report names King as a "suspicious person," he alleged that it is vague and contains no facts to support this assertion, including any mention of a burglary or a backpack. *See, e.g., Compl*. ¶¶ 113, 114, 120-121, 125. According to King, the vagueness of the report "allows SMPD to later allege (some 100 days later) something different—a burglary, robbery, jaywalking, spitting on sidewalk or any crime to justify their claim of reasonable suspicion on July 3, 2016." *Id*. at ¶ 122; *see also id*. at ¶ 118.

3

King alleged that based on the CAD Incident Report, Thornburg "failed to articulate (and cannot articulate) specific facts which show what behavior as observed by any SMPD officer made [King] a 'suspicious person.'" *Id.* at ¶ 126. Therefore, according to King, Thornburg "performed the *Terry* stop on less than reasonable suspicion." *Id.* at ¶ 128.

The court liberally construed the complaint as alleging three claims for relief: 1) a 42 U.S.C. § 1983 ("section 1983") claim for violation of the Fourth and Fifth Amendments based on his detention; 2) a section 1983 claim against San Mateo and Chief of Police Manheimer under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), based on the "Stop and Identify" practice; and 3) claims for fraud and conspiracy to commit fraud, based upon San Mateo's "scheme to conceal the practice of 'Stop & Identify' through the filing of overly vague public documents," which allows police officers to "change previously filed facts." Compl. ¶¶ 147-148.

Defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint and King moved for partial summary judgment on his claims. [Docket Nos. 8, 15.] On January 29, 2017, the court granted in part and denied in part the motion to dismiss and denied King's motion for summary judgment as premature. [Docket No. 37.] The court dismissed King's section 1983 claim based on violation of the Fifth Amendment, claims against Manheimer, *Monell* claim, and fraud and conspiracy to commit fraud claims with leave to amend. The court ordered King to file any amended complaint by February 12, 2018. *Id.* King did not file an amended complaint by the court-ordered deadline.

**B. Procedural History**

The court held a case management conference on March 21, 2018. Following the case management conference, the court issued a Minute Order regarding King's request for leave to amend his complaint:

> Plaintiff may not amend his complaint to address claims that the court dismissed in its 1/29/18 order. By 4/5/18, Plaintiff may file a motion for leave to amend the complaint to add the following three claims only: fraud against Lt. Earnshaw, Bane Act, and race discrimination.

[Docket No. 46.]

4

On March 23, 2018, the court issued an order appointing counsel for King for the limited purpose of representing him at mediation, which was scheduled for April 19, 2018 before mediator Martin H. Dodd. [Docket Nos. 35, 48.]

On April 5, 2018, King filed a motion for leave to file an amended complaint. [Docket No. 49 (Mot. to Amend).] King sought to amend his complaint to add the following claims for relief: 1) a claim for violation of California's Bane Act, California Civil Code section 52.1 against unspecified defendants; 2) a claim for fraud against Lt. Earnshaw based on his knowingly making false statements to King in the letter attached to the complaint at Exhibit C; 3) a claim of fraud and obstruction of justice against San Mateo and Earnshaw for withholding "material & comprehensive CAD information" in response to King's Public Records Act request and discovery; and 4) a claim of racial profiling against San Mateo in violation of California Penal Code section 13519.4(e). *Id*.

King's proposed claim against Earnshaw was based on the allegation that Earnshaw's statement in his November 17, 2016 letter to King that "there was a burglary less than a mile away" from where King was detained on July 3, 2016 was a "lie" because the burglary actually took place approximately 1.3 miles away. Mot. to Amend 4-6. King argued that Earnshaw lied about the distance in order to "Frame-up" King. *Id*. at 6.

King's proposed claim of fraud and obstruction of justice against San Mateo and Earnshaw was based on his allegations that there are material differences between the CAD report that King received in response to his Public Records Act request and the copy of the CAD report that he received in discovery in this litigation. *Id*. at 7-8.

On April 23, 2018, before the hearing on King's motion, Mediator Dodd filed a certification that the parties participated in a mediation on April 19, 2018 and that the case settled. [Docket No. 53.] The court entered the conditional dismissal order on April 24, 2018.

**C. The Parties' Settlement Agreement**

The parties executed a Memorandum of Settlement on April 19, 2018. [Docket No. 57-1 (D. King Decl., July 9, 2018, ¶ 2 Ex. A (Memorandum of Settlement).] In relevant part, the agreement provided that 1) San Mateo would prepare an addendum to the CAD report for the

5

incident in question "which will state that Aaron King was stopped as a suspect for this incident, but was cleared as a suspect for the incident under investigation and was sent on his way," and that San Mateo would attach the addendum to the CAD report "such that anyone requesting a copy of said report shall receive the addendum"; 2) San Mateo would arrange for an in-person meeting between King and Chief Manheimer so that he could "air any grievances in conjunction" with the matters alleged in the complaint in this litigation; 3) Chief Manheimer would provide a letter to King expressing "her regrets and sympathy" for King's detention; 4) San Mateo would conduct "training of its patrol officers on *Terry* stops and the law on demanding photographic identification in connection with such stops"; and 5) King would execute a formal settlement agreement releasing all claims, but that "it is the intention of the Parties that this Memorandum of Settlement will be enforceable in Court." Memorandum of Settlement.

According to Defendants, they have substantially performed their obligations under the Memorandum of Settlement. They have created the addendum to the CAD report stating that King had been "cleared of suspicion and sent on his way," Chief Manheimer sent King a letter dated June 18, 2018 in which she expressed her sympathy and regret to King regarding the incident, and the promised additional training on *Terry* stops is "in progress." D. King Decl. ¶¶ 8-10, Exs. G-I. San Mateo has also attempted to schedule King's meeting with Manheimer. *Id.* at ¶ 10, Ex. I. On June 22, 2018, defense counsel sent a draft settlement agreement to King, which he refuses to sign. *Id.* at ¶ 11, Ex. J.

### D. The Present Motion

King moves to reopen the case and to rescind the settlement agreement he reached with Defendants on April 19, 2018 pursuant to California Civil Code section 1689.[1] The basis for the motion appears to be as follows: echoing the claims he made in his motion for leave to file an amended complaint, King contends that Earnshaw "allowed the altering and falsifying of CAD

---

[1] King's motion does not comply with the Local Rules. His motion consists of a 36-page motion and a 14-page "Brief and Points of Law" in support of his motion, violating the page limits set forth in Local Rule 7-2(b), which provides that motions may not exceed 25 pages in length. Further, he attaches a number of exhibits to his motion, none of which are authenticated. *See* Civ. L.R. 7-5(a) ("Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration").

6

reports" and introduced these altered reports into these proceedings by producing them in discovery in this litigation and attesting under penalty of perjury to their genuineness. [Docket No. 55 (Pl.'s Mot.) 2-3.] Further, defense counsel David King and Shawn Mason allowed such alteration and falsification of the reports and introduced the reports into these proceedings. *Id.* at 3. According to Plaintiff, Earnshaw, Attorney David King, and Mason also "[o]ffered and provided unlawful consideration, thus voiding the contract[.]" *Id.* It appears that the "unlawful consideration" to which King refers is the parties' agreement as part of their settlement to add an addendum to the CAD report stating that King was stopped but cleared as a suspect for the incident under investigation and was sent on his way. *See* Mot. 33. It also appears that King asks the court to refer this matter to the United States Attorney for "criminal investigation." *See* Pl.'s Mot. 1.

Defendants oppose the motion and ask the court to enforce the parties' settlement agreement.

## II. DISCUSSION

### A. Motion to Rescind

King brings his motion to rescind pursuant to California Civil Code section 1689, which provides in relevant part that "[a] party to a contract may rescind the contract" in the following circumstances:

> (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.
>
> (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.
>
> (3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause.
>
> (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.
>
> (5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.

7

>  (6) If the public interest will be prejudiced by permitting the contract to stand.
>
>  . . .

Cal. Civ. Code § 1689(b)(1)-(6). "Rescission is a remedy that disaffirms the contract. The remedy assumes the contract was properly formed, but effectively extinguishes the contract ab initio as though it never came into existence, and its terms cease to be enforceable." *Viasphere Int'l, Inc v. Vardaryan*, No. 5:12-CV-01536-HRL, 2015 WL 1969141, at *3 (N.D. Cal. Apr. 30, 2015), *amended sub nom. Viasphere Int'l, Inc. v. Vardaryan*, No. 5:12-CV-01536-HRL, 2015 WL 4397486 (N.D. Cal. July 17, 2015) (citing Cal. Civ. Code § 1688). The party seeking rescission bears the burden of establishing facts demonstrating that he or she is entitled to rescind the settlement agreement. *Ware v. Security-First Nat'l Bank of Los Angeles*, 7 Cal. 2d 604, 608 (1936) (in action for rescission, "[t]he burden was on plaintiff to establish the alleged failure of consideration."); *Bonaccorso v. Kaplan*, 218 Cal. App. 2d 63, 67 (1963) (holding that plaintiffs alleging that fraud and misrepresentations in connection with a real estate transaction entitled them to rescission bore the burden of proof).

King's motion is somewhat difficult to follow and he does not specify which subsection of section 1689 supports his request for rescission. Based on his briefing, the court surmises that King seeks rescission under 1689(b)(3), which applies where "the consideration for the obligation of the rescinding party becomes entirely void from any cause." The court's conclusion is based on the following information. King argues that the agreement called for "unlawful consideration" and cites California Civil Code sections 1607 and 1608. Section 1607 provides that "[t]he consideration of a contract must be lawful within the meaning of Section 1667," and section 1667 defines "unlawfulness" in relevant part as "[c]ontrary to an express provision of law." Cal. Civ. Code §§ 1607, 1667(1). Section 1608 provides that "[i]f any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608. Based on these authorities, it appears that he seeks to rescind the contract under section 1689(b)(3). The "unlawful consideration" to which King refers is the provision of the parties' settlement agreement in which Defendants agree to add an addendum to

the CAD report stating that King was stopped but cleared as a suspect for the incident under investigation and was sent on his way. King argues in his reply brief that this portion of the agreement is unlawful because it violates California Government Code sections 6200, 6201, and 34090. *See* Reply 4.

King also adds a separate basis for his motion to rescind in his reply: he argues that section 1689(b)(1) applies because "facts were misrepresented to him [by defense counsel] in order to get [King] to enter into contract." Reply 3. The court addresses these arguments below.

### 1. Rescission Based on Unlawful Consideration

King first argues that the settlement agreement should be rescinded because one of its consideration provisions is unlawful, namely, Defendants' agreement to attach an addendum to the CAD report about King. King states that following the mediation, he wrote defense counsel "seeking to add [California Penal] Code § 851.8 to the contract, in place of one of the consideration planks," but that counsel "did not respond favourably to the request." Reply 2; *see also* Mot. 14 ("during mediation MrKing [sic] continued to request consideration consistent with CA Penal Code 851.8(a)," but defense counsel "were adamant that they could not provide this remedy.").[2] After conducting additional research, King formed the opinion that adding an addendum to the CAD report violates California Government Code sections 6200, 6201, and 34090. Reply 4. Section 6200 provides the following:

> Every officer having the custody of any record, map, or book, or of any paper or proceeding of any court, filed or deposited in any public office, or placed in his or her hands for any purpose, is punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for two, three, or four years if, as to the whole or any part of the record, map, book, paper, or proceeding, the officer willfully does or permits any other person to do any of the following:
>
> (a) Steal, remove, or secrete.

---

[2] California Penal Code section 851.8(a) provides that "[i]n any case where a person has been arrested and no accusatory pleading has been filed, the person arrested may petition the law enforcement agency having jurisdiction over the offense to destroy its records of the arrest," and that the records may be sealed and thereafter destroyed "upon a determination that the person arrested is factually innocent." Cal. Penal Code § 851.8(a).

9

(b) Destroy, mutilate, or deface.

(c) Alter or falsify.

Cal. Gov't Code § 6200. Section 6201 provides that the commission of any of the acts proscribed in section 6200 by a non-custodian is a misdemeanor. Cal. Gov't Code § 6201.[3] Section 34090 governs destruction of city records:

> Unless otherwise provided by law, with the approval of the legislative body by resolution and the written consent of the city attorney the head of a city department may destroy any city record, document, instrument, book or paper, under his charge, without making a copy thereof, after the same is no longer required.
>
> This section does not authorize the destruction of:
>
> (a) Records affecting the title to real property or liens thereon.
>
> (b) Court records.
>
> (c) Records required to be kept by statute.
>
> (d) Records less than two years old.
>
> (e) The minutes, ordinances, or resolutions of the legislative body or of a city board or commission.
>
> This section shall not be construed as limiting or qualifying in any manner the authority provided in Section 34090.5 for the destruction of records, documents, instruments, books and papers in accordance with the procedure therein prescribed.

Cal. Gov't Code § 34090.

King argues that the parties' agreement to have Defendants add a statement to the CAD report stating that "Aaron King was stopped as a suspect for this incident, but was cleared as a suspect for the incident under investigation and was sent on his way" constitutes unlawful alteration under sections 6200, 6201, and 34090. He does not analyze any of the statutes he cites or offer any authority to support his position.

Section 6200 makes it a crime for a custodian of records to "[a]lter or falsify" a

---

[3] Section 6201 provides that "[e]very person not an officer referred to in Section 6200, who is guilty of any of the acts specified in that section, is punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code, or in a county jail not exceeding one year, or by a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment."

10

government record, but the statute does not define the term "alter." Cal. Gov't Code § 6200(c). Defendants cite the dictionary definition of "alter," which is "to make different without changing into something else," and argue that since the Legislature coupled "alter" with "falsify" in the statute, "the alteration of the record contemplated by [section 6200] is to materially change information in the record." Defs.' Supp. Br. 2; *see* Merriam-Webster, https://www.merriam-webster.com/dictionary/alter?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Sept. 14, 2018). Defendants argue that the act of "supplementing [the CAD report] with truthful information designed to ensure the record at issue did not unfairly associate an innocent person with a crime" should not be considered "alteration" within the meaning of the statute, since they did not change any of the information on the record but instead added "accurate, truthful, explanatory information." Defs.' Supp. Br. 2.

The court agrees. As part of the settlement of this case, the parties agreed that Defendants would supplement the CAD report with information that all of the parties agree is truthful and accurate: the statement that King was stopped as a suspect for the incident under investigation but was cleared and sent on his way. This statement does not change the meaning of the original CAD report but instead adds additional, clarifying information. King offers no argument or authority that supplementing an official record by adding accurate, truthful information to the record constitutes unlawful alteration within the meaning of section 6200. Moreover, section 34090 does not apply. That statute allows a city to destroy a city record under certain, limited circumstances. Nothing in the settlement agreement provided that Defendants were to destroy any records and King does not argue that they have done so.

Accordingly, King fails to meet his burden to establish that he is entitled to rescission on the basis of unlawful consideration.

### 2. Rescission Based on Mistake or Fraud

Under section 1689(b)(1), a party may rescind a contract if his consent "was given by mistake, or obtained through duress, menace, fraud, or undue influence[.]" King does not clearly explain how section 1689(b)(1) applies. He makes no argument that he consented to the parties' agreement under duress, menace, or undue influence. His rescission argument appears to be based

11

in part on his theory that Earnshaw "allowed the altering and falsifying of CAD reports" and introduced these altered reports by producing them in discovery in this litigation. The court notes that King's argument that SMPD employees altered and falsified the CAD reports is confusing and difficult to follow, and it is not at all clear that the documents attached to his motion support his theory. None of them are authenticated and many have been altered with redactions. King admits that he himself redacted some of the exhibits "to protect identifying information of alleged burglary victim." Mot. 4 n.1. Therefore, although King presents his argument about the falsification of the documents as if it were established fact, it is far from clear that such a claim has merit.

Moreover, King's theory about the falsification of the police records does not support rescission of the settlement agreement, as he has not shown that he entered into the settlement agreement as a result of mistake or fraud occurred. King was aware of the alleged alterations and falsification of the documents *before* the mediation and decision to settle his claims; in fact, they formed the basis for the proposed new claims for relief in his motion for leave to file an amended complaint. King also admits that the parties discussed his allegations about the CAD reports at the mediation. Specifically, he contends that defense counsel was "made aware" of the "altered & fake CAD reports, and that after a discussion from which he was excluded, defense counsel and the mediator "convinced [King] that the Defendants' documents were legitimate and lawful." Mot. ¶¶ 56, 60-62. King was represented by counsel at the mediation, and he does not suggest that he was unable to discuss his theories of liability with his counsel before he agreed to settle his claims. His apparent second thoughts about the settlement do not give him a basis to rescind the contract. King's motion to rescind the settlement agreement is denied.

**B. Motion to Enforce Settlement Agreement**

Defendants argue that the court should compel King's performance under paragraph 6 of the Memorandum of Settlement. Paragraph 6 of the memorandum provides that King would "execute a formal settlement agreement fully releasing all named defendants in the Complaint currently on file with the Court in this matter as well as the Proposed First Amended Complaint, but it is the intention of the Parties that this Memorandum of Settlement will be enforceable in

12

Court." D. King Decl. Ex. A ¶ 6. According to Defendants, defense counsel sent a draft settlement agreement to King which he has refused to sign. *Id*. at ¶ 11.

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted); *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) (district court has "inherent power to enforce . . . agreement in settlement of litigation before it"). A "motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract," and "[a]n action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court." *Adams v. Johns–Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (citation and internal quotations marks omitted). "However, the district court may enforce only *complete* settlement agreements. Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890 (emphasis in original) (citations omitted).

"The interpretation of a settlement agreement is governed by principles of state contract law." *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993) (citing *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990)). "This is so even where a federal cause of action is 'settled' or 'released.'" *Id*. (citing *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)). Here, California contract law governs the analysis because the parties litigated and settled the case in this state. "Under California law, the intent of the parties determines the meaning of the contract. The relevant intent is 'objective'—that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties." *United Commercial Ins. Serv*, 962 F.2d at 856 (citations omitted).

Here, the parties do not dispute that they each signed the Memorandum of Settlement. They also do not dispute the provisions of the Memorandum of Settlement, including that the Memorandum of Settlement "will be enforceable in Court." Accordingly, there is "no need for an evidentiary hearing on whether an agreement existed, or what its terms were." *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138-39 (9th Cir. 2002).

King does not respond to Defendants' motion to enforce the settlement agreement. It

13

appears that his position is that the parties' agreement should not be enforced because the provision calling for an addendum to the CAD report is void because it calls for unlawful alteration of a public record. As discussed above, King's argument is not persuasive, as he has failed to show that adding accurate information to CAD report constitutes unlawful alteration within the meaning of California Government Code section 6200 or any other California statute. King makes no other argument in opposition to Defendants' motion to enforce the settlement agreement. Accordingly, the motion to enforce the settlement agreement is granted.

## III. CONCLUSION

For the foregoing reasons, King's motion to rescind the parties' settlement agreement is DENIED. Defendants Barker and Thornburg's motion to enforce the settlement agreement is GRANTED. King is ordered to immediately comply with the Memorandum of Settlement in conformance with this order, and promptly work with Defendants to execute a formal settlement agreement that is consistent with the terms of the Memorandum of Settlement.

**IT IS SO ORDERED.**

Dated: September 24, 2018



Donna M. Ryu
United States Magistrate Judge

14